**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JOSEPH LEE JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 25-4031-JWL** |
| **FRANK BISIGNANO,**[1] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of the Commissioner of Social Security (Doc. 31) to dismiss Plaintiff's Amended Complaint (Doc. 13), and arguably also on the Motion of Plaintiff for Mandamus. (Doc. 11).

Plaintiff filed a complaint in this court pursuant to Title II of the Social Security Act, Old Age and Survivors Benefits, for a disabled dependent adult, claiming the Social Security Administration (SSA) was violating his due process rights by failing to provide an accounting of Social Security Disability Insurance benefits paid, and the amounts due, the dates due, and the amounts and dates paid. (Doc 1, p.3). He appeared to allege no

---

[1] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

offset, or recoupment could be made by the agency because of his filing bankruptcy in 2020 and because, although he had been in jail, he had not been convicted of a crime. Id. He also suggested that he had erroneously not received COVID stimulus payments somehow because of the SSA's alleged errors.

**I.     Background**

The Commissioner filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. 10) to which the pro se Plaintiff responded with a Motion for Mandamus and Injunctive Relief (Doc. 11), a Response (Doc. 12), an Amended Complaint (Doc. 13), and a Motion for and in support of Preliminary Injunction. (Doc. 14). The court denied Plaintiff's Motion for Preliminary Injunction, noting that

> suits against the SSA, its officers, or employees relating to Federal Old-Age, Survivors, or Disability Insurance Benefits may only be brought pursuant to 42 U.S.C. 405(g) and may not be brought pursuant to federal question jurisdiction, or against the United States as a defendant.

(Doc. 15, p.2). The court went on to conclude, "42 U.S.C. 405(g) does not provide for Preliminary Injunction against the SSA, and Plaintiff does not point to any authority for Preliminary Injunction within 42 U.S.C. Chapter 7, Subchapter 2. Therefore, Plaintiff's motion is DENIED." Id.

In the Amended Complaint, Plaintiff claimed jurisdiction based upon 5th Amendment Equal Protection, 6th Amendment Due Process, Mandamus, and a Declaratory Action. (Doc. 13, p.3). In the claims portion of his Amended Complaint, Plaintiff alleges persons receiving Federal Old-Age, Survivors, and Disability Insurance Benefits pursuant to Title II of the Social Security Act are provided records of payments

and offsets and Plaintiff is due his records because he perceives his back payments did not go back to 1993.  Id.  In the Amended Complaint Plaintiff acknowledges "a substantially equivalent complaint was previously filed in this court as case number 25-4023 [sic (20-4023-JWB)] and assigned to the Honorable Judge Brooms [sic]."  Id. p.5.

Thereafter, the court filed a Scheduling Order on July 9, 2025 (Doc. 21) in which it explained that in Case Number 20-4023-JWB the court entered judgment on January 4, 2021 remanding the case to the SSA for further proceedings and on remand (based on information provided by the Commissioner in the earlier case), Plaintiff was granted Adult CDB (Child Disability Benefits) on July 6, 2023. (Case No. 20-4023-JWB, Doc. 60).  The court noted in its Scheduling Order that in his Amended Complaint Plaintiff apparently attempted to change the nature of this suit from judicial review of a decision of the Commissioner of Social Security to a Constitutional Due Process and Equal Protection claim.  (Doc. 21, pp.2-3).  However, the court found

> it is also apparent that the claims in the Complaint (Doc. 1) and in the Amended Complaint (Doc. 13) are premised on allegations the SSA did not properly compute Plaintiff's past due benefits when it granted his claim for benefits in July 2023 and has refused to provide an accounting of the payments made.  Thus, it is clear that both the Complaint and the Amended Complaint in this case are seeking judicial review of a decision of the Commissioner of Social Security granting CDB, apparently in July 2023. Therefore, determination of the issues presented here rests on the circumstances of that award.

Id. p.3.

Because knowing the circumstances of the award of CDB would be necessary to decide whether the Amended Complaint should be dismissed or whether judicial review should continue, the court stayed all deadlines in the case, ordered the Commissioner to

3

"file with the court no later than July 31, 2025, the Notice of Decision granting Plaintiff's claim for CDB (apparently issued July 6, 2023) and the Notice of Award issued thereafter," and to file any Social Security "final decision issued regarding Plaintiff since July 6, 2023." (Doc. 21, p.3). The court also ordered the Commissioner to file a response to the Amended Complaint no later than 21 days after filing the Notice of Decision and Notice of Award with the court. Id. p.4. Finally, the court ordered, "the parties shall file no further motions or other pleadings in this case other than Motion(s) for Extension of Time, pending further order of the court." Id.

On July 28, 2025, the Commissioner filed a response to the court's Scheduling Order, filing the Notice of Decision dated July 6, 2023; the Notice of Award dated September 5, 2025; and a Benefits Letter, dated July 12, 2025. (Doc. 23, Attachs. 2-4). Plaintiff filed six documents on August 7, 2025 (Docs. 24-29), which were summarily stricken by the court as filed in violation of the court's Scheduling Order. (Doc. 30). Thereafter, the Commissioner filed his Response to Plaintiff's Amended Complaint—a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. (Doc. 31).

The court issued a Second Scheduling Order requiring Plaintiff to file a Response to the Notice of Decision, Notice of Award, Benefits Letter, and the Motion to Dismiss no later than September 30, 2025, and permitting the Commissioner to file a Reply no later than 30 days thereafter. (Doc. 32). Plaintiff filed his Response (Doc. 33) (titled Summary of Case Issues) on September 3, 2025, and the Commissioner filed his Reply on September 29, 2025, making the issue ripe for consideration. (Doc. 34). Finally, Plaintiff filed an unpermitted Surreply on October 9, 2025. (Doc. 35).

## II.     Discussion

In his motion to dismiss, the Commissioner points out the Amended Complaint alleges diversity jurisdiction, but Plaintiff asserts both he and the Commissioner are citizens of Kansas.  He then argues both that federal agencies cannot be sued in diversity, and that even under Plaintiff's apparent theory diversity is destroyed because both Plaintiff and the Commissioner are citizens of Kansas.  (Doc. 31, p.1) (hereinafter Mot. Dismiss).  He then argues that, even if jurisdiction existed, Plaintiff's equal protection and due process claims would fail because the SSA mailed a letter regarding Plaintiff's benefits to his representative payee, Breakthrough House, and included detailed information regarding his date of entitlement, calculation of backpay for January 2011 through August 2023, and offsets.  (Mot. Dismiss, p.2) (citing Doc. 23, Attach. 4 (hereinafter Benefits Letter)).  He then argues that the Commissioner's provision of the Benefits Letter provided the information Plaintiff seeks, there is no remaining controversy or potential recurring violation, and this case should, therefore, be dismissed as moot.  Id. 2-3.

In his Response Brief, Plaintiff provides six objections to the Motion to Dismiss. (Doc. 33, 1-2) (hereinafter Response, 1-2).  Plaintiff objects (1) that the Benefits Letter does not itemize each offset, preventing him from disputing it; argues (2) that his bankruptcy discharge in 2020 precludes offsets and/or recoupment; argues (3) that the backpay was erroneously based upon a date in 2011, instead of 1993 when SSI (Supplemental Security Income) was first sought; argues (4) that $16,000 was erroneously deducted for Medicare premiums; argues (5) the SSA erroneously applied

Title XVI Regulations rather than Title II Regulations to stop payments when he was confined in public institutions; and argues (6) he was not given the opportunity to appeal the suspension of benefits when he was confined in November, 2024 to determine competency. (Response 1-2). Plaintiff expands on the bases of his objections in the remainder of his Response Brief. Id. 3-7.

In his Reply Brief, the Commissioner reiterates his earlier arguments and asks the court to dismiss the case on the bases previously argued. Although unpermitted, Plaintiff's Surreply (Doc. 35) has been considered but does not affect the decision of this matter.

The Commissioner is correct that the presence of the Commissioner of the Social Security Administration as the Defendant in this case defeats the diversity jurisdiction alleged by Plaintiff. Rywelski v. Biden, No. 23-5099, 2024 WL 1905670 (10th Cir. May 1, 2024). However, in its Scheduling Order the court discussed the Complaint and the Amended Complaint and found "it is clear that both the Complaint and the Amended Complaint in this case are seeking judicial review of a decision of the Commissioner of Social Security granting CDB." (Doc. 21, p.3). Moreover, in its Order denying a preliminary injunction, the court pointed out that decisions of the Commissioner may only be challenged pursuant 42 U.S.C. § 405(g). (Doc. 15). Thus, there can be no doubt that if jurisdiction lies in this case, it must be based in § 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

The Commissioner appears to acknowledge that fact in that he argues the Benefits Letter provided in response to the court's Scheduling Order "provided the most recent

information Plaintiff seeks in his Amended Complaint, [and] his case should be dismissed based upon mootness." (Mot. Dismiss 3) (citing Fed. Bureau of Investigation v. Fikre, 601 U.S. 234, 240–42, 144 S. Ct. 771, 777, 218 L. Ed. 2d 162 (2024)). However, although the Benefits Letter provides helpful information necessary to decide Plaintiff's claims, it does not moot all the claims.

In his Complaint, Plaintiff argued, "I was in jail, yes but I was not found guilty or serving a sentence." (Doc. 1, p.3). Although Plaintiff did not make the same argument in his Amended Complaint, in his response to the Commissioner's Motion to Dismiss Plaintiff extensively alleges that the SSA applied Title XVI regulations rather than Title II regulations when determining offset for time spent in a penal institution. (Doc. 33, pp.2, 4-7) (hereinafter Pl. Response). In his Reply the Commissioner argues the Benefits Letter provided Plaintiff, among other information, "an explanation as to why benefits were not due for certain periods during which he was incarcerated." (Doc. 34, p.1) (hereinafter Comm'r Reply). The Commissioner is correct that the Letter explains,

> He was not due benefits for March 2011 through August 2011, November 2012 through April 2013, February 2017 through May 2018 and August 2019 through October 2019 because he was confined to an institution as a result of a court order in connection with a criminal case and the stay was paid for with public funds.

(Benefits Letter 1) (emphasis added). Moreover, the Letter also states,

> We could not pay him all of the Social Security benefits we withheld. This is because he received SSI money for February 2011 through October 2023.
>
> When receive SSI money is received [sic] for a month, and later Social Security benefits are received, we have to reduce your Social Security benefits. We do this to make sure that the total SSI and Social Security

7

>monthly payment is not more than it would have been if the Social Security benefits had been paid on time.
>
>Allowing for JOSEPH L JONES Social Security benefits, we should have paid him $48,340.58 less in SSI money. Because of this, we reduced his Social Security benefits by $48,340.58.

<u>Id.</u> at 2.

The Title II regulation relating to nonpayment of benefits for prisoners, states, "No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony." 20 C.F.R. § 404.468(a). On its face, that regulation withholds benefits only from individuals <u>confined in a penal institution or correctional facility</u> for <u>conviction</u> of a <u>felony</u>. Judging from the language used in the Benefits Letter, SSI benefits may be discontinued any time an individual is <u>confined to an institution</u> by a <u>court order</u> <u>in connection with</u> a criminal case and the stay was <u>paid for with public funds</u> and it appears that standard was applied to withhold SSI benefits. Moreover, it appears from the language of the Benefits Letter that Title II CDB benefits were withheld for all of the instances and for the entire time in which Title XVI SSI benefits were withheld without considering whether Plaintiff was <u>in a penal institution or correctional facility</u> was the subject of a <u>conviction</u>, and whether the conviction was for a <u>felony</u>. Finally, if some of the periods of confinement were not properly considered, then perhaps the computation of total SSI and Social Security benefits must be recomputed.

As the discussion above makes clear, Plaintiff has stated a plausible claim, and that claim has not been rendered moot by the Commissioner's Benefits Letter. The

8

deciding question before the court is whether Plaintiff's claim was timely filed, and the court finds it was.

In the Notice of Award issued September 5, 2023, the SSA notified Plaintiff he was entitled to a monthly child's benefit beginning January 2011 and he would receive $865.00 that he was due for September 2023 and after that he would receive $865.00 each month. (Doc. 23, Attach. 3, p.1) (hereinafter Notice of Award). The Notice of Award explained the agency's handling of past due benefits:

> We are withholding his Social Security benefits for January 2011 through August 2023. We may have to reduce these benefits if he received Supplemental Security Income (SSI) for this period. When we decide whether or not we will have to reduce his Social Security benefits, we will send him another letter. We will pay him any Social Security benefits he is due for this period.

Id.

> The Notice also informed Plaintiff of his right to appeal:
>
> You have 60 days to ask for an appeal.
>
> The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.
>
> You will have to have a good reason for waiting more than 60 days to ask for an appeal.

Id. at 3.

This record does not indicate Plaintiff ever received a letter explaining the reductions in his Social Security benefits before he received the Benefits Letter dated July 12, 2025. and filed in this case, although the Benefits Letter indicates the net back pay of $46,528.42 "was released to Joseph Jones on March 5, 2024." Benefits Letter

pp.2-3.  Moreover, the facts that the Commissioner did not provide a copy of such a previously issued letter, that Plaintiff argued in his response to the Commissioner's first motion to dismiss that the "$45,000.00 on time payment around April 2024 clearly doesn't add up," and that "around April 2024 unknown Topeka Social Security office employee denied Mr. Jones the payment records [sic]" all suggest pretty convincingly the Plaintiff never received (and the Commissioner never sent) a letter of explanation in March 2024.  (Doc. 12, p.3).

On this record, the first time Plaintiff received the promised explanation regarding disposition of his CDB back pay was dated July 12, 2025, and was presented in connection with this case.  Thus, the first time he had an opportunity to confirm this potential error in the final decision dated July 6, 2023, was after this case was filed—clearly within the sixty days provided to request review in the Notice of Award.

To the extent the Commissioner may argue judicial review is unavailable in this case because Plaintiff did not appeal to the agency and get a "final decision" regarding the computation of benefits, this case reeks with the insinuation that the local office of the Social Security Administration, despite that Plaintiff did not get the explanation he was promised; and, for whatever reason, had a preconceived opinion regarding Plaintiff's allegations (as did this court when it first read the Complaint); and failed its duty to listen to the complaints, investigate the facts of the case, and explain in detail and clarity how to appeal the computation of his benefits.  The court is aware the SSA handles millions of cases annually, and the Topeka office likely handles thousands of transactions, but the public is entitled to expect competent, caring service—even from an overworked agency,

and even when the individual's idiosyncrasies make it difficult. Nonetheless, the court is willing to order a remand in accordance with sentence six of 42 U.S.C. § 405(g), but not sentence four, should the Commissioner request it.

The court has considered Plaintiffs remaining allegations of error and finds them without merit. Regarding Plaintiff's claims the Commissioner erred in failing to itemize each offset individually and in offsetting and/or recouping liabilities occurring before his bankruptcy discharge in 2020, Plaintiff cites no authority demonstrating that the Commissioner is required to itemize offsets individually or that liabilities in Social Security computations are dischargeable in bankruptcy. Therefore, he has not demonstrated error in those matters.

Plaintiff's argument that Social Security benefits were payable before 2011 ignores the Benefits Letter's explanation:

> The earliest month of entitlement a child can have to Social Security benefits on the record of a parent is the month of entitlement of the parent when the parent is alive or the month of death if the parent is deceased. Cheryl Jones' month of entitlement to Social Security benefits was January 2011. Joseph Jones' month of entitlement is also January 2011 based on Cheryl's month of entitlement. He cannot have an earlier month of entitlement on the record of Cheryl Jones even though he was found disabled as of December 10, 1986.

(Benefits Letter 1). Plaintiff has demonstrated no error in this explanation.

Plaintiff's argument $16,000 was erroneously deducted from his back pay misunderstands the Notice of Award. The Notice of Award informed Plaintiff his medical insurance under Medicare began September 2023. (Notice of Award 1). It then explained he could choose to have medical insurance start in January 2013, but to do so

11

he must tell the agency "in writing that you want medical insurance beginning January 2013," and "<u>pay us</u> $16,453.60 <u>or tell us</u> we can withhold this amount from your check." (Notice of Award 2) (underlines added).  Plaintiff did not tell the agency they could withhold the payment from his check, they did not do so, and Plaintiff provides no evidence that they did so.  Thus, the court finds no error in this regard.

Finally, Plaintiff's claim the Commissioner erred in failing to allow him to appeal the suspension of benefits when he was confined in November 2024 is subsumed within the court's decision above regarding the application of 20 C.F.R § 404.468(a).

In conclusion, the court finds it necessary for the Commissioner to investigate how the Plaintiff's confinement was considered in light of 20 C.F.R. § 404.468 and the court's findings above, and if necessary, to recompute Plaintiff's back pay back to 2011 in light thereof and to report back to this court with his findings.  Because the court has found additional briefing is necessary to decide the issues here and because the government's attorneys cannot address the issues due to the current lapse in appropriations (the "government shutdown"), the court finds this case now stayed by District of Kansas Standing Order 25-05.  Therefore, the court will issue an order after the lapse in appropriations is resolved setting a briefing schedule on this matter.

**IT IS THEREFORE ORDERED** that the Commissioner's Motion to Dismiss (Doc. 31) is DENIED as discussed above and Plaintiff's Motion for Mandamus (Doc. 11) is DENIED as mooted by this order.

**IT IS FURTHER ORDERED** that the Commissioner shall investigate how the Plaintiff's periods of confinement were considered in light of 20 C.F.R. § 404.468 and

the court's findings above, and if necessary, shall recompute Plaintiff's back pay back to 2011 in light thereof, and report back to this court with his findings.

**IT IS FURTHER ORDERED** that the court will issue a further briefing schedule after the current lapse in appropriations is resolved.

Dated October 21, 2025, at Kansas City, Kansas.

s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**